Dear Mr. Taylor:
You requested an opinion of this office on whether a parish-wide elected official may legally provide, for the use of the local school board, report card covers that contain the elected official's name, and whether the school board may legally use those report card covers to send its public school students their progress reports. More specifically, you state that you have recently been providing the Livingston Parish School Board report card covers with a message stating that they are provided "compliments of Jeff Taylor, Livingston Parish Assessor."[1] You further note that your office views the sponsorship of these report card covers as a form of advertising, similar to the purchase of ads in public school athletic programs and other school sponsorships, and accordingly use campaign funds to purchase these covers. Finally, you state that this practice of placing ads on report cards sent to public school children, albeit paid with campaign funds, has been recently questioned. For reasons stated below, it is the opinion of this office that, while no violation of state printing laws or election laws appears to have occurred, the practice you have described may be challenged as an implicit endorsement by the school board on a captive audience.
La. R.S. 43:111.1 concerns state printing and provides as follows:
 No public funds shall be used in whole or in part for the payment of the cost of any advertisement containing therein the name of any public official whether elected or appointed; provided, however, that the *Page 2 
provisions of this section shall in no case be construed to apply to advertisements or notices required or authorized by law to be published or to any advertisements placed by any public agency or body authorized by law to advertise in the furtherance of its functions and duties.
The statute prohibits the use of public funds toward the payment of advertisement costs incurred by a public official, subject to certain exceptions. This statute is inapplicable to the practice you describe involving the use of campaign funds, and not public funds. Therefore, no violation of La. R.S.43:111.1 appears to have occurred.[2]
Also relevant to your issue is the Louisiana Election Code, La. R.S. 18:1, et seq., La. R.S. 18:1463 (B) (2) in particular, which provides as follows:
 No person shall cause to be printed or assist in the distribution, transportation, or transmission by any means of any facsimile of an official ballot, or cause to be printed, distributed, transported, or transmitted any unofficial sample ballot containing a photograph, or likeness of any person which falsely alleges, with an intent to misrepresent, that any person or candidate, or group of candidates in an election is endorsed by or supported by another candidate, group of candidates or other person.
The legislature implemented La. R.S. 18:1463 (B) to prevent false and misleading political endorsements. As the report card covers described in your request are not a ballot of any sort, no violation of the Louisiana Election Code has occurred.
However, it is less clear whether the report covers officially sent by the school board to parents could be construed as the school board's endorsement for a specific candidate. The report cards sent home with public school children meet the jurisprudential standards for school-sponsored speech: they bear the imprimatur of the school and involve pedagogical interests of the school. See Fleming v. Jefferson County School Dist. R-1,298 F.3d 918, 924 (10th Cir. 2002). The imprimatur concept covers speech that is so closely connected to the school that it appears the school is somehow sponsoring the speech. Id. If a parent who receives and examines the grade report cover could reasonably infer that the school board, by permitting its distribution in a school-sponsored document, was endorsing you for public office, then the practice you describe could constitute a false and misleading political endorsement. To the extent that the report cover space is used by no other public official but you, your advertisement may indeed appear to be an endorsement by the school board.
Another related issue is whether the grade report covers are an objectionable political message forced by the school board on a captive audience, i.e., parents who must receive the progress report, sign it, and return it to their child's school. Although the *Page 3 
First Amendment protects free speech, even if offensive to some, courts have held that such expression may be proscribed when it intrudes upon a "captive audience." Frisby v. Schultz,487 U.S. 474 (1988); FCC v. Pacifica Foundation, 438 U.S. 726,748-749 (1978). Whether or not an audience is captive depends on whether the audience has the choice of ignoring the message. For example, where a utility customer may escape exposure to objectionable material contained in the utility's bill insert simply by throwing the bill insert into a wastebasket, there was no "captive audience" that needed protection. See ConsolidatedEdison Co. of New York, Inc. v. Public Service Commission of NewYork, 447 U.S. 530 (1980). Here, a parent who receives his/her child's progress report is a captive audience as he/she is not at liberty to ignore or discard it, but must review and sign the card.
Another concern is whether the school board, by providing grade card cover space for advertising has created a nonpublic forum, which may not be subject to viewpoint discrimination. Where the government acts in a proprietary capacity to raise money or to facilitate the conduct of its internal business, the Supreme Court generally has found a nonpublic forum, subject to the requirements of reasonableness and viewpoint neutrality. SeeLehman v. City of Shaker Heights, 418 U.S. 298, 303-04 (1974);Cornelius v. NAACP Legal Defense Ed. Fund, Inc.,473 U.S. 788, 805-806 (1985). Thus, if the school board allows one person to place political advertisements on progress card covers, it must allow equal access to anyone similarly interested in placing political advertisements on the covers in order to ensure viewpoint neutrality.
Courts have recognized the possibility that political advertisements placed on spaces leased for advertisements by a governmental body may be misconstrued as that public body's endorsement of a candidate imposed on the public.[3] For instance, a city government's ban on political advertisements on its buses has been upheld as a reasonable measure to "minimize chances of abuse, the appearance of favoritism, and the risk of imposing upon a captive audience." See Lehman, 418 U.S. 298,303-304.[4] To the extent the school board does not seem to be allowing other advertisements on grade card covers at this time, your advertisement on grade card covers could strike the parent as the school board's official endorsement, rather than one of many routine sponsorships or advertisements unrelated to the school board's views and policies. Closing the forum is a constitutionally permissible solution to the dilemma caused by *Page 4 
concerns about providing equal access while avoiding the appearance of government endorsement of a particular viewpoint. See DiLoreto v. Downey Unified School District, 196 F.3d 958,970 (9th Cir. 1999).
For the reasons stated above, it is the opinion of this Office that the grade card covers distributed by public schools bearing your name and title, paid with campaign funds, do not violate any state printing laws or the Election Code.[5]
We hope that this sufficiently answers your inquiry, but if we can be of further assistance, please do not hesitate to contact us.
Yours very truly,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 By: ____________________________ Uma M. Subramanian Assistant Attorney General
[1] You have provided us with a copy of the grade card cover, which, at the bottom of the front cover, bears your name in large bold print followed by "Livingston Parish Assessor" in a block. The top portion of the card cover has "Report of Progress" followed by a box for filling in the student's name, school and grade. The message "compliments of Jeff Taylor, Livingston Parish Assessor" appears to be the most prominent among the contents of the front side of the cover. The back side contains a box with a form letter to the parent with instructions from the principal, a signature line for the principal, and a signature line for the parent for each of the four nine-week periods. Below this box appears a public message from you to the parent on how to improve his/her child's self-image in order to avoid drug and alcohol abuse. This message concludes with your (printed) signature followed by "Jeff Taylor, Livingston Parish Assessor." The page that the parent must sign therefore has a signed message from you to the parent, while the front page has your name and office in noticeable, large print.
[2] For the sake of clarity, it may be wise to include on each cover a disclaimer stating that no public funds were used in connection with its production or printing.
[3] The cases cited here do not address whether a governmental body may legally authorize political advertisements in official documents it sends out. Rather, they address the reasonableness of view point restrictions placed by the government on speech in public fora. Nevertheless, they serve to illustrate the concerns that political advertisements on grade card covers raise.
[4] In Lehman, a plurality of the Court upheld a ban on political advertising in buses, because the transit system sought, by its limitation on political speech, "to minimize chances of abuse, the appearance of favoritism, and the risk of imposing upon a captive audience." Lehman, 418 U.S. 298, 304. Justice Douglas concurred in the judgment on the narrow ground that petitioner had no constitutional right to force his message upon a captive audience. The majority could not agree on whether the advertising space in a city transit system was a First Amendment forum.
[5] This opinion does not address the question of whether, in donating these grade card covers, you and your campaign have complied with the Campaign Finance Disclosure Law. Such issues are to be directed to the Louisiana Board of Ethics.